IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–02683–RBJ–KMT

E. ELLEN WESSLER, and
MONTY WESSLER,

      Plaintiffs,

v.

COLONIAL NATIONAL MORTGAGE, a division of COLONIAL SAVINGS, F.A.,
WELLS FARGO BANK,
MORTGAGE ELECTRONICS REGISTRY SYSTEMS, INC.,
CASTLE STAWIARSKI, LLC,
JOHN OR JANE DOES 1-1000, Unknown Investors, and
JOHN ROES 1-20, Undisclosed Mortgage Aggregators, Mortgage Originators, Loan Sellers,
Trustees of Pooled Assets, and/or Trustees for Holders of Certificates of Collateralized Mortgage
Obligations, and All Unknown Persons Who Claim any Interest in the Subject Matter of this
Action,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Motion to Dismiss Amended Complaint and

Supporting Brief by Defendants Wells Fargo Bank and Mortgage Electronic Registry Systems,

Inc." [Doc. No. 38, filed December 16, 2011]; "Defendant Colonial National Mortgage

("CNM"), a Division of Colonial Savings, F.A.'s Motion to Dismiss Amended Complaint

Pursuant to Fed. R. Civ. P. 12(b)(6)" [Doc. No. 60, filed April 10, 2012]("Colonial Motion");

and "Defendant Castle Stawiarski, LLC's Motion to Dismiss Amended Complaint Pursuant to

Fed. R. Civ. P. 12(b)(6)" [Doc. No. 79, filed June 20, 2012] ("Castle Motion").  All motions are

fully briefed and ripe for recommendation by this court.

This court recommends that all three motions be granted in part for the reason set forth

herein and that the case be dismissed.

### *Background*

On July 17, 2006, Plaintiff E. Ellen Wessler ("Mrs. Wessler") executed a

Promissory Note ("Note") in favor of CNM in the principal amount of $999,999.00 in order to

partially finance the purchase of a home located at 4536 Stonehill Road, Colorado Springs,

Colorado ("the Property").  (Compl. [Doc. No. 2], Ex. A.)[1]  On the same day, Mrs. Wessler and

Mr. Wessler[2] executed a Deed of Trust recorded July 26, 2006 at reception number 206109778,

in the real property records of El Paso County, Colorado ("Deed of Trust").  (*Id.*, Ex. B.)

Mortgage Electronic Registration Systems, Inc. ("MERS") was listed as the beneficiary on the

Deed of Trust, "acting solely as a nominee for Lender and Lender's successors and assigns."

(*Id.* at 2.)

---

[1] This court may consider the documents attached to Plaintiff's complaint without converting the motion to one for summary judgment.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (considering documents attached to plaintiff's complaint when addressing a motion to dismiss).

[2] This court does not know why Mr. Wessler signed the Deed of Trust when he was neither on the Promissory Note nor was he an owner of the property, but assumes it may be connected to his status as a person who planned to be in physical possession of the property.

Beginning in early 2010, Mrs. Wessler failed to make her agreed to monthly mortgage payments for approximately nine months[3], and on January 31, 2011, Colonial Savings commenced a foreclosure action through the El Paso County Public Trustee.  A contested hearing was scheduled on the foreclosure action on September 1, 2011.  On that same day, September 1, 2011, the Wesslers filed a Complaint pursuant to Colo. R. Civ. P. 105, also in El Paso County District Court, which was later removed to federal court as this instant action. (Compl.)  In the foreclosure proceeding, the state court Magistrate, after denying the Wesslers' motion for dismissal of the foreclosure action based on the newly filed quiet title action, issued an order authorizing the sale of the Property (Am. Compl. ¶ 149), and on October 12, 2011, Colonial Savings purchased the Property for $1,136,007.31.  (*Id.* ¶ 151.)

The Wesslers now bring claims for quiet title, asserting that Mrs. Wessler "claims superior right, sole and lawful title, and priority equitable interest in and to the Property" (*id.* ¶160), for fraud against Colonial Savings and Castle for claiming that Colonial Savings was the holder of the Note during the foreclosure proceedings (*id.* ¶170), and for violations of the Fair Debt Collection Practices Act ("FDCPA") against Colonial Savings and Castle (*id.* ¶¶ 241-44).

The defendants claim that both E. Ellen and Monty Wessler lack standing to bring a quiet title action; that the misrepresentations upon which the fraud claim are brought are not misrepresentations but rather true facts; that by the time of the foreclosure final hearing and the

---

[3] The "Foreclosure Reinstatement Figures" dated March 11, 2011 (Am. Compl. [Doc. No. 35], Ex. 8 at 3) states that monthly payments were not made on the note from March 1, 2010 through March 31, 2011.

ultimate sale the Note was owned and held by Colonial Savings; that even if the Note changed

hands during the time period over which the foreclosure was pursued, the technical change in

ownership did not result in any damages to the plaintiffs; and that the claims based upon

violations of the FDCPA are invalid because Colonial Savings is not a bill collector and the

mortgage debt is outside the provisions of the FDCPA.

### *Legal Standards*

### *1.        Federal Rule of Civil Procedure 12(b)(1)*

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter

jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to

adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the

complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal

courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically

authorized to do so).  The burden of establishing subject matter jurisdiction is on the party

asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A

court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it

becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The dismissal is

without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see

also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals

for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a

disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### 2.    *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss,

means that the plaintiff pled facts which allow "the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two

prongs of analysis.  First, the court identifies "the allegations in the complaint that are not

entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare

assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual

allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the

allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at

1950.

 Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments.  *Southern Disposal, Inc., v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th

Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940.

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Id*. at 1949 (citation omitted).  "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949

(citation omitted).

*ANALYSIS*

**1.      *Standing***

The doctrine of standing concerns a litigant's right to bring a cause of action.

*Developmental Pathways v. Ritter*, 178 P.3d 524, 530 (Colo. 2008).  Standing is a limitation on a

court's jurisdiction, *American Postal Workers Union v. U. S. Postal Service*, 861 F.2d 211, 213

(9th Cir.1988), and is reviewed under Rule 12(b)(1).  *Colorado Environmental Coalition v.*

*Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (standing is reviewed under Rule 12(b)(1));

*Commonwealth Prop. Advocates, LLC v. Saxon Mortgage Servs., Inc.*, Civ. Action No.

10-cv-1347-PAB-KMT, 2011 WL 2600987, at *1 (D. Colo. June 30, 2011) (same).

Rule 12(b)(1) challenges are generally made in two ways: the moving party may (1)

facially attack the allegations regarding subject matter jurisdiction or (2) go beyond allegations

in the complaint by presenting evidence to challenge the basis for subject matter jurisdiction.

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004).  The court

must accept the allegations in the complaint as true when resolving a facial attack regarding

subject matter jurisdiction.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  On the

other hand, when considering evidence attacking the basis for subject matter jurisdiction, the

court may refer to this evidence without converting the motion to a summary judgment motion.

*Commonwealth Prop. Advocates*, 2011 WL 2600987 at *2.  In either case, the plaintiff has the

burden of demonstrating subject matter jurisdiction because the plaintiff is the party asserting

jurisdiction.  *Id.* at *2 (quoting *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189

(10th Cir. 2008)).

In diversity jurisdiction cases, the Supreme Court has stated that, as a general matter, "jurisdiction is tested by the facts as they existed when the action is brought." *Smith v. Sperling*, 354 U.S. 91, 93 n.1(1957).  In a case grounded in federal question jurisdiction, the Supreme Court also stated that "the plaintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course." *Gollust v. Mendell*, 501 U.S. 115, 126(1991); *accord City Communications, Inc. v. Detroit*, 888 F.2d 1081, 1086 (6th Cir.1989) ("A plaintiff must maintain standing throughout all stages of his litigation.").  The Tenth Circuit has adopted this view. *Powder River Basin Resource Council v. Babbitt,* 54 F.3d 1477, 1484 (10th Cir. 1995)  When a plaintiff no longer has an injury, the Article III requirements of a case or controversy are no longer met; therefore "a plaintiff must maintain standing at all times throughout the litigation for a court to retain jurisdiction." *Id.*

In general, constitutional standing to bring suit involves three elements.  "First, the plaintiff must have suffered a concrete, actual 'injury in fact.'  Second, there must be a causal connection between the injury and the conduct at issue.  Third, it must be likely that a favorable decision will redress the plaintiff's injury." *Green v. Haskell County Bd. of Comm'rs*, 568 F.3d 784, 793 (10th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### A.        *Standing of Monty Wessler*

Quiet title actions are governed by Colo. R. Civ. P. 105.  In a quiet title action, the relief sought is clear title to the subject property by means of a complete adjudication of the rights of all parties to the action. *Hopkins v. Bd. of County Comm''s*, 564 P.2d 415, 420 (Colo. 1977).  A decree declaring title in any party "grant[s] full and adequate relief so as to completely determine

the controversy and enforce the rights of the parties." Colo. R. Civ. P. 105(a); *Argus Real Estate,*

*Inc. v. E-470 Public Highway Authority*, 109 P.3d 604, 609 (Colo. 2005).  Quiet title actions are

intended to grant full relief to the party asserting an interest in the property and any claims a

party has must be so raised.  *Id.*

"A plaintiff in a quiet title action under [Colo. R. Civ. P.] 105 bears the burden of

establishing title in the property superior to that of the defendant."  *Hutson v. Agricultural Ditch*

*& Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986).  Thus, the plaintiff may not capitalize on the

weakness of any defendant's claim to title, but can succeed only by establishing the strength of

her own claim to title.  *School Dist. No. Six v. Russell*, 396 P.2d 929, 932 (Colo. 1964); *Fastenau*

*v. Engel*, 270 P.2d 1019, 1020–21 (Colo. 1954).  Accordingly, if the facts fail to show that the

plaintiff has title, he or she may not attack the sufficiency of the evidence on which the court

adjudged title to be in the defendant.  *Hinojos v. Lohmann*, 182 P.3d 692, 697 (Colo. App. 2008);

*Bock v. Bd. of County Comm'rs*, 520 P.2d 149, 151 (Colo. App. 1974).

The plaintiffs assert that "Mrs. Wessler is the sole, lawful owner of certain land, real

property and appurtenances, as granted by Warranty Deed, recorded with the El Paso County

Clerk and Recorder, on or about July 26, 2006, at reception number 206109777."  (Am. Compl.

¶ 24.)  There is no dispute that Monty Wessler was not granted any interest in the Property by

virtue of the Warranty Deed, that he did not sign the Note at issue in this case, and that he never

obtained title by other conveyance of the property.  He did, however, sign the Deed of Trust.

Under Colorado law, a deed of trust securing repayment of a debt instrument is *an incident to*

that debt instrument.  *Stetler v. Scherrer*, 226 P. 858, 859 (Colo. 1924)("The law of this state,

9

following the decisions of the Supreme Court of the United States, is that the transfer or

assignment of a negotiable promissory note carries with it as an incident the mortgage upon real

estate or chattels given to secure its payment.).  The security instrument does not create debt; it

merely offers collateral to secure the debt as made.  As Mr. Wessler cannot establish any

independent claim to title, he has no standing to act as a Plaintiff in a quiet title action.[4]

Interestingly, however, in a quiet title action where "such action [is] for the recovery of

actual possession of the property, the party in actual possession shall be made a party."  Colo. R.

Civ. P. 105(b).  That section of the Colorado rule clearly contemplates that such a possessory

interest will be against a "defendant."  Colo. R. Civ. P. 105(b).  Further, the use of the term

"recovery of actual possession" implies that the plaintiff in the quiet title action is not in

possession of the property, but that there is someone else in possession whom the plaintiff seeks

to dispossess and who therefore must be joined as a defendant, whether or not he otherwise has a

cognizable interest in the property.  In this case, both E. Ellen and Monty Wessler are in

possession of the property.[5]  (Am. Compl. ¶ 28.)

---

[4] Any 'community property' or 'marital' rights Monte Wessler might claim to the
property through inheritance or divorce are inchoate at this point and therefore not actionable in
a quiet title action.  "An unvested or inchoate interest in marital property is insufficient to
constitute ownership . . . .  Under Colorado law, a spouse's right to the other spouse's property
does not vest until death or divorce."  *U.S. v. 9844 South Titan Court, Unit 9, Littleton, Colo.,* 75
F.3d 1470, 1476 (10th Cir. 1996)(quoting *In Re Questions Submitted by United States District
Court*, 517 P.2d 1331, 1333 (Colo. 1974); *In re Vann*, 113 B.R. 704, 706 (Bkrtcy. D. Colo. April
10, 1990).

[5]In fact, both Wesslers assert that Colonial Savings and Castle filed a Forced Entry and
Unlawful Detainer action attempting to evict both Monty and E. Ellen Wessler from the
property.  (Am. Compl. at 10.)  To date, it appears that action has been unsuccessful.

Therefore, this court concludes at this stage of the proceedings that as a plaintiff, Mr. Wessler cannot establish any "injury in fact" as required for standing, and that he has no grounds upon which to bring a quiet title action as to this property in which he has no title interest. Similarly, Monty Wessler has no standing with respect to claims brought against Castle and Colonial Savings for fraud and violations of the FDCPA for the same reasons. As Monty Wessler does not now and never did have any title interest to the property, he cannot show damage against Colonial Savings or Castle as a result of statements or representations made during the foreclosure against the property, even if any statements or representations of any of the defendants were knowingly false in the context of the allegations of the Amended Complaint.

As to the FDCPA claim, on February 11, 2011, subsequent to a request from E. Ellen Wessler, Castle sent a letter verifying debt pursuant to Colo. Rev. Stat. § 12-14-109 of the Colorado Fair Debt Collection Practices Act addressed solely to E. Ellen Wessler. (Am. Compl., Ex. 5.) Castle correctly identified "E. Ellen Wessler and Monty Wessler" as the "Mortgagor(s)," given Mr. Wessler's signature on the Deed of Trust.

A civil case may be brought by a consumer against any debt collector who violates the protective provisions of the FDCPA. 15 U.S.C. § 1692k. The FDCPA defines "consumer" as "any natural person obligated . . . to pay any debt." § 1692a(3). The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the . . . property . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes . . . ." § 1692a(5). Monty Wessler was not a consumer as defined by the FDCPA with respect to the loan at issue in this case because he had no interest or

11

obligation with respect to the Note.  *See Zsamba v. Community Bank*, 63 F. Supp. 2d 1294, 1299

(D. Kan. 1999).

Further, no facts are alleged in the Amended Complaint that either Castle or Colonial

Savings tried to collect any debt from Monty Wessler under the Note for the debt due from E.

Ellen Wessler.  As Plaintiffs do not allege any collection efforts, wrongful or otherwise, that

were ever pursued against Monty Wessler, Mr. Wessler has failed to allege sufficient facts to

establish standing (or to state a claim) as to any FDCPA claim.

Therefore, this court finds that Monty Wessler lacks standing to pursue any of the claims

as outlined in the Amended Complaint, and therefore recommends that all of Monty Wessler's

claims be dismissed.

One remaining issue as to Monty Wessler, however, is whether E. Ellen Wessler should

be provided an opportunity to file an Amended Complaint clarifying and aligning the parties in

the quiet title action to include Monty Wessler as a defendant.  This federal action was originally

brought as a quiet title action in state court and removed to this court pursuant to diversity

jurisdiction.  If Mrs. Wessler is required to join Monty Wessler as a defendant in order to

proceed with this claim, diversity jurisdiction would have to be addressed in relation to Fed. R.

Civ. P. 19(a) and (b).[6]

---

[6] In short, Fed. R. Civ. P. 12(b)(7) allows for dismissal for failure to join a person under
Rule 19.  A person is "required" to be joined under Rule 19 if in that person's absence, the court
cannot accord complete relief among existing parties; or that person claims an interest relating to
the subject of the action and is so situated that disposing of the action in the person's absence
may, as a practical matter, impair or impede the person's ability to protect the interest or leave an
existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

However, given that this court is recommending that the motions to dismiss filed by the defendants be granted such as to result in dismissal of the case altogether, practicality directs that this issue be tabled until the District Court has issued a final ruling on the Recommendation.

### B.   Standing of E. Ellen Wessler

It is not contested that E. Ellen Wessler received a Warranty Deed from Seller Adam Brown upon the original purchase of the Property. (Am. Compl. ¶¶24, 29.)  This purchase was accomplished in part with funds that were provided pursuant to the Note and E. Ellen Wessler's promise to pay the Lender as required by the Note.[7]  It is also not disputed that as a result of Ms. Wessler's failure to make payments as required under the Note, in January 2011 Colonial Savings commenced proceedings pursuant to Colo. Rev. Stat. § 38-38-100.3 *et seq*. and Colo. R. Civ. P. 120 to foreclose upon the Note and Deed of Trust executed by Ms. Wessler at the time she purchased the Property and received the warranty deed.

As noted, at the contested hearing in the foreclosure matter, Mrs. Wessler asked Magistrate Erler to dismiss the foreclosure hearing in light of the newly filed quiet title action

---

obligations because of the interest.  Fed. R. Civ. P. 19(a)(1).  However, if a required party cannot be joined because joinder would destroy the court's jurisdiction, as in this case, the court must decide if the case can go forward without the required person, considering the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties and the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief or other measures as well as considering whether a judgment rendered in the person's absence would be adequate and whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.  Fed. R. Civ. P. 19(b).

[7] The Note states, "In return for a loan I have received, I promise to pay U.S. $999,999.00 . . . plus interest, to the order of the Lender."

wherein she was attempting to adjudicate the rights of all parties to the Property.  (Am. Compl. ¶ 136.)  Although this obviously would have been the better procedure, the Magistrate declined to grant the motion.  *Id.*  Ms. Wessler testified at the hearing, presenting largely the same evidence contained in the Amended Complaint, wherein she claimed "she was not in default to Colonial [Savings] and did not owe Colonial [Savings] any money" (*id.* ¶142), asserted that she thought the original Note was a forgery (*id.* ¶ 144), and claimed Colonial Savings was not a Qualified Holder (*id.* ¶ 148).  The Magistrate declined to dismiss or continue the hearing, found against E. Ellen Wessler and in favor of Colonial Savings, and entered his Order allowing for sale of the property.  (*Id.* ¶149.)[8]  Colonial Savings purchased the Property on October 12, 2011, and a Confirmation Deed to Colonial Savings from the Public Trustee was issued.[9]  (*Id.* ¶ 151.)

Defendants argue that E. Ellen Wessler has no standing to bring a quiet title action in this case because "any property interest held by Mrs. Wessler was extinguished by law as a result of the foreclosure sale which occurred on October 12, 2011."  (Colonial Mot. at 6.)  This argument, however, completely ignores the directives of Colo. R. Civ. P. 120(d), which states

> The scope of inquiry at such [final] hearing shall not extend beyond the existence
> of a default or other circumstances authorizing, under the terms of the instrument
> described in the motion, exercise of a power of sale contained therein, . . .  The

---

[8] Although the Order Authorizing Sale is not attached to the Am. Compl., it is mentioned in the Am. Compl. and is central to Plaintiffs' claims.  As a result, it may be considered in resolving the motion to dismiss.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir.1997).

[9] See note 5 above with respect to Confirmation Deed.  The Confirmation Deed can be found at Colonial's Motion, Exhibit F.

> court shall determine whether there is a reasonable probability that such default or other circumstance has occurred, and whether an order authorizing sale is otherwise proper . . . , and shall summarily grant or deny the motion in accordance with such determination. **Neither the granting nor the denial of a motion under this Rule shall constitute an appealable order or judgment. The granting of any such motion shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction, . . . .**

*Id.* (emphasis added). Clearly the Rule contemplates that some homeowners will challenge the foreclosure in a quiet title or other appropriate proceeding. Key to this case, the quiet title action was already proceeding when the final hearing took place, although only barely. This fact distinguishes this case from *Commonwealth Property Advocates*, 2011 WL 2600987, and others where the quiet title action is brought <u>after</u> the order authorizing foreclosure had been entered. As noted, as of September 1, 2011, the Magistrate in the foreclosure proceeding would have been well-advised to vacate the proceedings before him in favor of the full adjudication function which could be pursued in a quiet title action.

Nonetheless, twenty days after the foreclosure hearing, on September 20, 2012, Mrs. Wessler filed a lis pendens against the property prior to the forfeiture sale alerting any purchaser to the fact that the Magistrate's Rule 120 order might not provide clear title to a buyer due to a previously filed quiet title action of which the Magistrate was aware. (*Id.* ¶ 150.) "The purpose of filing a notice of lis pendens pursuant to [Colo. Rev. Stat.] § 38-35-110 is to provide notice to anyone who may acquire an interest in the property during the pendency of the litigation [affecting title to real property] so that he or she will be bound by its outcome . . . . This insures that judgments affecting interests in real property are not undermined by transfers during

15

litigation." *Thomas v. Lynx United Group, LLC*, 159 P.3d 789, 793 (Colo. App. 2006); *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373–74 (Colo. App. 1994). Obviously, the purchaser at the foreclosure sale, Colonial Savings, had both actual and constructive notice of the pendency of the quiet title action given that it was the subject of a ruling by Magistrate Erler on September 1, 2011, and the title to the property was encumbered by the lis pendens.

No party specifically addressed what is known as the *Rooker-Feldman* Doctrine as barring the Wesslers from bringing this quiet title action given the contested ruling involving largely the same parties in the foreclosure action; however it is prudent to acknowledge the doctrine at this juncture. The *Rooker-Feldman* doctrine is a jurisdictional prohibition based on 28 U.S.C. § 1257, which holds that federal review of state court judgments may be obtained only in the United States Supreme Court. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). *Rooker-Feldman* not only bars lower court federal consideration of issues that were actually presented to and decided by a state court, but it also bars consideration of constitutional claims that are "inextricably intertwined with" issues that were ruled upon by a state court. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483–84 n.16 (1983). A constitutional claim is inextricably intertwined with issues reached by a state court "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). In short, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse some action or decision by a state court, or would effectively void its ruling. *Id.* The doctrine

16

'prohibits a lower federal court from considering claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment.' "  *Patrick v. Bank of New York Mellon*, Case No. 11-cv-01304-REB-MJW, 2012 WL 934288, at *8–9 (D. Colo. March 1, 2012).  *See also Jackson v. Peters*, 2003 WL 22664679, at *3 (10th Cir. Nov.12, 2003); *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1108 (10th Cir. 2000).

> The Tenth Circuit Court of Appeals, however, recently noted that there are
>
> indications that the Colorado courts would limit the effect of determinations in Rule 120 proceedings.  The Colorado Court of Appeals has stated that "proceedings pursuant to [Colo. R. Civ. P.] 120 are <u>not adversarial in nature</u>, are not final, and generally no appeal may be taken to review the resulting orders." *United Guar. Residential Ins. Co. v. Vanderlaan*, 819 P.2d 1103, 1105 (Colo. App. 1991).  Accordingly, no final judgment is entered in Rule 120 proceedings and the rulings of the court in such proceedings do not have preclusive effect." *Id*.

*In re Miller*, 666 F.3d 1255, 1262 (10th Cir. 2012) (emphasis added).  In a footnote, the court further noted, "[c]ases from the Colorado federal district court have reached differing results concerning whether orders in Rule 120 proceedings have preclusive effect or sufficient finality under the *Rooker-Feldma*n doctrine to prevent relitigation in subsequent federal proceedings." *See Goldenhersh v. Aurora Loan Servs., LLC,* No. 10-cv-01936-MSK, 2010 WL 3245166, at *2 (D. Colo. Aug.16, 2010) (discussing split in cases).  This court finds those cases denying preclusive effect under *Rooker-Feldman* more persuasive than those granting preclusive effect. Therefore, this court cannot find that this court lacks jurisdiction over this matter pursuant to the *Rooker-Feldman* doctrine.  *Id*.

17

Therefore, the court finds that E. Ellen Wessler, as a preliminary matter, has claimed an injury in fact and that there appears to be a causal connection between the behavior complained of and the harm suffered which could be addressed by a decision favorable to Mrs. Wessler.

### 2.    *Failure to State a Claim for Relief*

As noted, this court views the sufficiency of Plaintiff's Amended Complaint by first presuming all of Plaintiff's <u>factual</u> allegations are true and construes them in the light most favorable to her in determining whether her claims are plausible on their face, examining each claim separately.  The court must begin its analysis by identifying allegations that may appear in the Amended Complaint which are not entitled to the assumption of truth because they are unsupported assertions, conclusory statements or legal conclusions.  As noted, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a plausible claim. *Iqbal*, 129 S. Ct. at 1940.

Throughout the Amended Complaint, Plaintiffs characterize the Deed of Trust which secures the Note as "defective."  However, never is this characterization supported by any facts which would suggest that the printed form that appears to be signed and in good order, at least as of July 17, 2006, is defective.[10]  (Am. Compl. at 5 and continuing.)  Therefore, this posturing,

---

[10] Plaintiffs make a spurious argument that they were not technically "seised of the estate" listed in the Deed of Trust prior to signing the Deed of Trust and therefore had no right to grant the Deed of Trust.  This argument is reminiscent of the proverbial "which came first, the chicken or the egg" conundrum.  Mrs. Wessler required the loan of money in order to enable her to purchase the property and become "seised of the estate."  The bank would not fund the loan and give Mrs. Wessler the money unless the security for the loan was in place.  All of these procedures are routinely consummated contemporaneously at the closing of the purchase and sale of property and the execution of the loan documents and deed.  To hold that such a real

and other bald assertions of the same nature and kind, are rejected and will be ignored by the court in determining the plausibility of each of the claims.

Further, there are numerous instances where the allegations in the Amended Complaint are directly contradicted by the documents attached either to the Complaint or to the Amended Complaint.  For instance, in the Amended Complaint at paragraphs 94, 95, 108, 119, and 121, the allegation is that CNM took an action or was listed as a particular kind of participant; however, the document attached and relied upon by the plaintiffs specifically stated that Colonial Savings, F.A.–and not CNM–was the participant referenced.  For example, the Amended Complaint at paragraph 94 avers that, "[s]aid Statement [Ex. 2 of the Amended Complaint] certified that CNM was a 'Qualified Holder' pursuant to . . . ."  Paragraph 95 repeats the same error, stating, "[s]aid statement certified that CNM was the current beneficiary of the Deed of Trust."  When the court examined Exhibit 2 of the Amended Complaint the Statement actually states, "1. Colonial Savings, F.A. ("Qualified Holder") is the holder of the original evidence of debt" and "2. Colonial Savings, F.A. ("Qualified Holder") is the current beneficiary of the Deed of Trust."  Further, the exhibit states unequivocally that Castle is representing Colonial Savings, F.A., not CNM.  Although CNM is a division of Colonial Savings, not a separate entity, this distinction has a particularized meaning in the context of this case which causes the court to infer

estate closing renders a Deed of Trust defective would mean that no person could ever purchase a home  if they required a mortgage loan in order to do so.  This court rejects this frivolous argument.

that these misstatements are intentional, not simply drafting errors.[11]  Because of the rampant

nature of these misrepresentations, where the attached document contradicts a factual allegation

in the Complaint or the Amended Complaint, the court will consider that which is contained in

the document to be entitled to the presumption of truth.

      The first ten pages of the Amended Complaint contain legal conclusions, bald assertions

and other information about the process of foreclosure in Colorado.  Because they are in the

nature of a narrative or summary and not specifically designated as "Assertions," the court will

not consider anything appearing the in the Amended Complaint prior to the numbered

paragraphs beginning under the sub-title "PARTIES" as factual averments to be considered with

respect to the findings the court must make when considering a motion to dismiss under Fed. R.

Civ. P. 16(b)(6).  *See Iqbal*, 129 S. Ct. at 1949–51.

---

[11] E. Ellen Wessler makes other allegations in the Amended Complaint that specifically distinguish CNM from Colonial Savings, F.A., and that appear to be calculated to mislead a casual reader of the Amended Complaint.  For instance, in spite of borrowing approximately one million, two hundred thousand dollars in order to purchase property from Allen Brown as the Warranty Deed specifically references (Am. Compl. ¶ 29 and Ex. 1), E. Ellen Wessler makes such bald statements in paragraphs 39 and 64 of the Amended Complaint as "CNM did not loan Mrs. Wessler any money."  Both paragraphs 39 and 64 of the Amended Complaint are drafted solely to imply that the loan was not funded.  In fact, what the paragraph really says is that either an entity distinguished from CNM (i.e. Colonial Savings, F.A.) funded the loan or the actual money from the loan was not given to Mrs. Wessler, but rather was provided to the seller, Allen Brown, as the purchase price for the home Mrs Wessler would be occupying.  Further, such obfuscation in the Amended Complaint is designed to veil the fact that Colonial Savings, F.A. was, and remained at all times during the life of Mrs. Wessler's loan, the servicer of the mortgage.  For instance, in paragraphs 119 and 120, the Amended Complaint makes allegations that "CNM, through CASTLE, filed a Verified Motion for an order authorizing the sale of the Property."  Again, Exhibit 9 to the Amended Complaint shows that Colonial Savings, F.A. was the Petitioner on the foreclosure action and Castle represented Colonial Savings, F.A., not CNM.

Under the two step analysis of *Iqbal*, the court finds that the following paragraphs and allegations in the Amended Complaint must be disregarded in whole or in part as containing unsupported assertions, conclusory statements or legal conclusions: 18, 24, 34, 37, 38, 39, 46, 47, 51, 54, 55, 56, 61, 62, 63, 64, 70, 77, 79, 82, 84, 85, 90, 91, 92, 94, 95, 101, 105, 106, 107, 108, 111, 119, 120, 121, 123, 145, 147, 148, 152, 153, 154, 159, and 160.   Other paragraphs will only be considered as amended to conform to the documentary evidence attached as part of the Complaint and the Amended Complaint as noted.   The court will consider recitals of the elements of a cause of action as tailored to Plaintiffs' facts; however the court will only give such paragraphs notice consideration.

### A.       *Claims for Quiet Title*

As noted in the standing section herein, the plaintiff in a quiet title action has the burden of establishing title superior to that claimed by the defendants and may not go forward on an action if all she can do is debunk Defendants' claims to title.  *See Russell*, 396 P.2d at 932; *Fastenau,* 270 P.2d at 1020–21.  If the facts, as viewed pursuant to the *Iqbal* standard, fail to show that the plaintiff has a claim of superior title, she may not attack the sufficiency of the evidence presented in support of Defendants' claims to title.   The facts alleged in the Complaint and the Amended Complaint which are entitled to the presumption of truth include the following:

E. Ellen Wessler received a Warranty Deed from seller, Adam Brown, on or about July 17, 2006, which was recorded in the Office of County Clerk and Recorded for El Paso County. (Am. Compl. ¶¶ 24, 29; Ex. 1.)  This purchase was accomplished in part with funds that were

provided pursuant to the Note and E. Ellen Wessler's promise to pay the Lender as required by the Note. (Compl., Ex. A. at 1.). The Deed of Trust provided that "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (Compl., Ex. B at 4. ) The Deed of Trust provides that Lender has various remedies, including the "power of sale" if the borrower defaults on any obligation in the Note. (*Id.* at ¶ 22.) The Lender described in the Deed of Trust is "Colonial National Mortgage, a division of Colonial Savings, F.A. (*Id.* at 1.) The beneficiary of the Deed of Trust is "MERS (solely as nominee for Lender and Lender's successors and assigns) . . . ." (*Id.* at 3.)

As a result of Ms. Wessler's failure to make payments as required under the Note for approximately nine months (Am. Compl., Ex. 8 at 3), in January 2011, Colonial Savings commenced proceedings pursuant to Colo. Rev. Stat. 38-38-100.3 *et seq.* and Colo. R. Civ. P. 120 to foreclose upon the Note and Deed of Trust executed by Ms. Wessler at the time she purchased the property. (Am. Compl. ¶ 78.) In connection with the foreclosure action, Alison Berry, an attorney working for Castle on behalf of Colonial Savings, filed a "Statement by Attorney for Qualified Holder Pursuant to 38-38-101, C.R.S." which was signed "Colonial Savings, F.A., QUALIFIED HOLDER/CURRENT HOLDER OF THE EVIDENCE OF DEBT." (*Id.*, Ex. 2 ["Stmt. by Atty."].)

Sometime between January 2011 and the date of the foreclosure hearing on September 1, 2011, the Note signed by E. Ellen Wessler was transferred from Colonial Savings to Wells Fargo

Bank.[12]  (Am. Compl. ¶ 118 [indicating Wells Fargo owned the Note as of March 11, 2011]; ¶¶

132–133 [letter from Wells Fargo dated July 21, 2011 indicating Wells Fargo owned the note as

of July 1, 2011]; *see also*, Compl., Ex. A at 4, Allonge to Promissory Note with undated stamp

"Pay to the Order of Wells Fargo Bank" and signed by Nancy Sutphen, vice president of

Colonial National Mortgage, a Division of Colonial Savings, F.A. and also, Compl., Ex. A at 4,

Allonge to Promissory Note, undated stamp "Without recourse pay to the Order of (BLANK),

Wells Fargo Bank, N.A." and signed by Joan M. Mills, Vice President [of Wells Fargo Bank].)

On or about July 12, 2011, Castle, representing Colonial Savings in the foreclosure action,

informed Magistrate Erler that Colonial Savings had reacquired the Note (from Wells Fargo)

since March 11, 2011.  (Am. Comp. ¶¶ 129–130.)

The contested foreclosure hearing was scheduled for September 1, 2011.  (Am. Compl. ¶

134.)  Before the hearing, on September 1, 2011, the Wesslers filed an independent action in

state court for quiet title.  (Am. Compl. ¶ 134.)  The Wesslers moved to dismiss the

administrative foreclosure action before Magistrate Erler, who denied the motion, and the

---

[12] Plaintiff makes a conclusory leap to assert that CNM or Colonial Savings 'sold' the Note to Wells Fargo Bank and then concludes that Colonial Savings received in exchange full face value in cash for the loan amount from Wells Fargo Bank.  (*See* Am. Compl. ¶ 123.) Plaintiff's assumption is conclusory and not based on any asserted fact.  The only factual evidence is that on an unknown date Colonial Savings, F.A., stamped the Note, "Pay to the order of Wells Fargo Bank NA With Recourse" and that at another unknown time, Wells Fargo stamped the Note with a similar endorsement but omitted the inclusion of a specific transferee, thus converting the Note to "Bearer" paper.  No facts are contained in the Complaint or Amended Complaint to support the conclusion that monetary consideration specific to either of these transactions was present.

hearing proceeded.  (*Id.* ¶¶ 136, 140.)  Colonial Savings represented at the hearing that it was the

holder of the evidence of debt and presented what it purported to be the original note to

Magistrate Erler.  (*Id.* ¶¶ 140, 143.)  Mrs. Wessler testified at the hearing that she believed the

Note presented was a forgery because she thought the original had been on legal-sized paper and

she thought her signature would have left an impression on the paper.  (*Id.* ¶ 144.)  Plaintiff now

claims, however, that the Note presented at the hearing was a "manufactured replica of the

Note."  (*Id.* ¶ 145.)  Apparently in the alternative, the plaintiff claims that Colonial Savings was

"holding physical possession of the Note for another entity."[13]  (*Id.* ¶ 147.)  Based on the

---

[13] These three "facts" asserted as to the status of the Note presented at the foreclosure proceeding are directly contradictory to one another.  Plaintiffs claim alternatively that the Note presented by Colonial Savings at the foreclosure hearing and which is now held by the Clerk of the United States District Court was either: (1) a forgery or (2) a 'manufactured' copy of the true original or (3) the true original, but Colonial Savings was only holding it for some un-named entity.  Therefore, the court will consider none of these statements to be a fact which must be considered true at this stage, but rather the Plaintiffs' theories of what might have been the true state of affairs.  A theory is not amenable to the assumption of truth given to facts contained in a complaint at this stage of the proceedings.  *Iqbal* at 1949.  Further, This court notes that Colo. Rev. Stat. § 4-3-308 provides in pertinent part: "(a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature . . . ."  *Id.*  The Official Comment regarding this section states in pertinent part: " 'Presumed' is defined in Section 1–201 and means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the [defendant here] is not required to prove that it is valid.  The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the [plaintiffs here].  The [plaintiffs are] therefore required to make some sufficient showing of the grounds for the denial before the [defendants] are required to introduce evidence. . . ."  *Id.*, Official Comment.

statements and evidence presented at the hearing, Magistrate Erler issued an Order Authorizing Sale of the property, and on October 12, 2011 the property was sold to Colonial Savings for $1,136,007.31, the amount of the debt. (*Id.* ¶¶ 149, 151.)

The gravamen of the quiet title action, therefore, is that E. Ellen Wessler held a title interest in the Property by virtue of her warranty deed from the seller but subject to the lien created by the Note and Deed of Trust representing the million dollar loan[14] she undertook in order to purchase the property, and that deed remains the superior title because the foreclosure action was not legal.  It is not contested that Mrs. Wessler failed to make payments pursuant to her promise to pay contained in the Note notwithstanding that she had made payments to Colonial Savings continuously from July 2006 through March 2010 and therefore appeared to know who was, at the least, servicing the mortgage.  Mrs. Wessler, however, challenges the validity of the foreclosure action because she claims that Colonial Savings, F.A. was not a Qualified Holder under the law because the Note had, during the proceedings, changed hands from Colonial Savings to Wells Fargo.  She claims she still holds title to the property because the foreclosure action was wrongful.[15]  Therefore, Mrs. Wessler has asserted a claim that her title

---

[14] Mrs. Wessler actually encumbered the property with two notes and deeds of trust at the time of purchase.  However, this case is concerned with only the first mortgage referenced herein.

[15] Mrs. Wessler does not explain how the Note and Deed of Trust simply cease to exist after the allegedly wrongful foreclosure proceedings and why she would now have unencumbered title without repayment of the loans she was given to finance the purchase of the Property.

through warranty deed, received from Adam Brown in 2006, is superior to the title of the

Defendants.[16]

Colorado Revised Statute § 38-38-101, *et seq.*, authorizes the holder of the evidence of

debt to foreclose.  Section 38-38-100.3 defines a "holder" as a person in actual possession of or

person entitled to enforce an evidence of debt . . . ."  Pursuant to § 38-38-101(1)(b)(II), when the

holder of an evidence of debt that  is secured by a deed of trust elects to foreclose all or a portion

of a property for sale, the holder, or the attorney for the holder, shall file the following

documents with the public trustee:

> . . . the original evidence of debt, together with the original indorsement or
> assignment thereof, if any, to the holder of the evidence of debt or other proper
> indorsement or assignment in accordance with subsection (6) of this section, or, in
> lieu of the original evidence of debt, one of the following: . . . (II) [a] copy of the
> evidence of debt and a certification signed and properly acknowledged by a
> holder of an evidence of debt acting for itself or as agent, nominee, or trustee
> under subsection (2) of this section or <u>a statement signed by the attorney for such
> holder citing the paragraph of section 38-38-100.3 (20) under which the holder
> claims to be a qualified holder</u> and certifying or stating that the copy of the
> evidence of debt is true and correct and that the use of the copy is subject to the
> conditions described in paragraph (a) of subsection (2) of this section.

Colo. Rev. Stat. § 38-38-101(1)(b) (Emphasis added).  Section 38-38-100.3(20) provides,

---

[16] The court does not consider the allegation that Mrs. Wessler's title is somehow
bolstered by her filing an "Acknowledgment, Acceptance and Correction of Deed" on November
7, 2011, weeks after the foreclosure sale.  The pertinent date fixing the rights of the parties is
September 1, 2011, the date upon which the Complaint in this case was filed.  "No muniment of
title acquired thereafter is admissible in evidence and a plaintiff cannot bolster a claim to title by
acquisition of title papers subsequent to the institution of an action, unless, by supplemental
pleadings, issues are framed based upon the subsequently acquired instrument." *Fastenau v.
Engel,* 270 P.2d 1019, 1022 (Colo. 1954).  "Matters occurring after the issues are made by the
original pleadings cannot be considered or embraced in a decree, unless brought into the case by
supplemental pleadings." *Id.*

> [q]ualified holder" means a holder of an evidence of debt, certificate of purchase, certificate of redemption, or confirmation deed that is also one of the following: . . . (f) A federal housing administration approved mortgagee; . . ."

*Id.*  Assuming for purposes of the court's consideration of the three motions to dismiss that Plaintiff is correct and that Colonial Savings did not have in its possession the true original Note as signed by E. Ellen Wessler on July 17, 2006, as previously noted Castle and Colonial Savings provided a "Statement to the County Public Trustee of El Paso County, Colorado" asserting and affirming that Colonial Savings was the Qualified Holder of the original evidence of debt and that Colonial Savings is the current beneficiary of the Deed of Trust.[17]  (Am. Compl., Ex. 2.)  It is not disputed that Colonial Savings attached to the document "a true and correct copy of the original evidence of debt" (the Note) and "a true and correct copy of the recorded Deed of Trust." (*Id.*)  Therefore, at a minimum in connection with the foreclosure proceedings Colonial Savings stated (1) that it was a person entitled to enforce[18] (Colo. Rev. Stat. §38-38-100.3(10), and (2) a writing that evidences a promise to pay a monetary obligation, such as a promissory

---

[17] Through MERS, the Lender's nominee, as well as the nominee for any assigned Lender.

[18] A person who is entitled to enforce a promissory note such as Mrs. Wessler's "presumptively includes [t]he person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank." [Colo. Rev. Stat.] § 38-38-100.3(10)(c)."  *McDonald v. OneWest Bank, F.S.B.,* 680 F.3d 1264, 1266 (10th Cir. 2012).  As the commercial code makes clear, a person entitled to enforce an instrument **may** be a holder, and need **not** be an owner, of the instrument.  Colo. Rev. Stat § 4-3-301 (emphasis added).  "[A]ttempt[ing] to graft 'holder in due course' requirements onto [the non-judicial foreclosure] process, though obvious in its purpose, is meritless and clearly distorts the law." *McDonald*, 680 F.3d at 1266 (emphasis added).

note (*id.* subsection (8)), and (3) who is also a federal housing administration approved

mortgagee (*id.*, subsection (20)(f)).

> Further, Colonial Savings stated through its counsel, Castle, in the Statement of Attorney
>
> The Qualified Holder of the evidence of debt agrees that it is obligated to indemnify and defend any person liable for repayment of any portion of the original evidence of debt in the event that the original evidence of debt if presented for payment to the extent of any amount other than the amount of a deficiency remaining under the evidence of debt after deducting the bid amount at sale, and any person who sustains a loss due to any title defect that results from reliance upon a foreclosure sale at which the original evidence of debt was not presented, . . .

(Stmt. by Atty. at ¶ 6.)  The Statement by Attorney acts as an indemnity by the entity claiming to

be the Qualified Holder thus protecting E. Ellen Wessler from any loss or damages should

another creditor attempt to collect on the foreclosed Note.

> Simply put, then, there was no requirement that Colonial Savings be the "owner" of the

Note in order to foreclose upon the property.  The parties do not dispute that at all times Colonial

Savings was the Loan Servicer of the Note, acting on behalf of the lawful owner of the Note, and

under law it was entitled to enforce the provisions of the Note.  Further, Colonial Savings was

also the Lender as provided in the Deed of Trust and was able to take action with respect to the

security interest.  Mrs. Wessler's claim that the foreclosure was unlawful is based on her factual

assertion that Colonial Savings did not own the Note at the time of the foreclosure and her theory

(not a factual assertion) that the document presented to the Magistrate at the foreclosure hearing

was not the original note that she signed in 2006.  However, assuming that all those assertions–

even including the theory–are true[19], Plaintiff has failed to state a claim for which relief can be granted because Colonial Savings was not required to own the Note or to present the original note as part of the foreclosure process, and indemnity was provided to Mrs. Wessler in the event an owner of the Note other than Colonial Savings were to attempt later collection.  Based on all the admitted facts of the Amended Complaint, as a matter of law Mrs. Wessler was divested of her title during a foreclosure proceeding in which she participated fully and the Property was sold to Colonial Savings at an authorized foreclosure sale.  Therefore, she has failed to set forth facts sufficient to show her own superiority of title.  This court, therefore, recommends that her "First Claim for Relief" for "Quiet Title Pursuant to C.R.C.P. 105, as against all Defendants" (Am. Compl. at 27) be dismissed.

### B.    Claim for Fraud/Misrepresentation

The "elements of fraudulent misrepresentation are a knowing misrepresentation of material fact, reliance on the material misrepresentation, the right or justification in relying on the misrepresentation, and reliance resulting in damages." *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003); *see Obeidat v. Chatila*, Case No. 10-cv-02819-WDM-CBS, 2011 WL 2729067, at *4 (D. Colo. July 13, 2011).  The elements of a claim for intentional misrepresentation are similar: 1) A misrepresentation; 2) of material facts; 3) that are false; 4) made with knowledge of the falsity or with indifference to its truth or falsity; 5) the party

---

[19] Colonial Savings alleges that it was the owner of the Note and that it held the Bearer paper in the form of the original note at the time of the final foreclosure hearing.  However, the court gives the presumption of truth about these contested facts to the plaintiff at this stage.

claiming fraud must have relied on the representation; 6) have had a right to have relied on it; and 7) acted in accordance with the reliance; and 8) in doing so suffer damage. *Institute for Professional Development v. Regis College*, 536 F. Supp. 632, 633 (D. Colo. 1982). *See also Behunin v. Dow Chemical Co.*, 650 F. Supp. 1387, 1391 (D. Colo. 1986).

Essential to all is that the fraud or misrepresentation alleged be of a <u>material</u> fact. "A material fact is a fact that affects the outcome of a case." *Crosby v. American Family Mut. Ins. Co.*, 251 P.3d 1279, 1283 (Colo. App. 2010); *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App.2005). In this case, even assuming for purposes of these motions that Colonial Savings did not own the Note at the time of foreclosure, that the Note presented at the foreclosure proceeding was not the original Note signed by Ms. Wessler in 2006, and that Colonial Savings knew it did not own the Note or possess the original Note and lied when it stated to the contrary, these facts are not material in determining the propriety of the foreclosure, the order authorizing the sale of the property and the sale of the property which divested Mrs. Wessler of any right, or the title or interest to the property. Further, as a result of the indemnity clause executed by Colonial Savings in the Statement of Attorney, Mrs. Wessler cannot suffer any damage if later Colonial Savings were proven not to be a "qualified holder" or if Wells Fargo or another entity actually holds the Bearer paper. The recourse of the true holder of the note would be against Colonial Savings and not Mrs. Wessler, leaving Mrs. Wessler unable to claim to have suffered damages as a result of the misrepresentations.

Mrs. Wessler has failed to state facts, accepted as true, which 'state a claim to relief that is plausible on its face' with respect to her fraud/misrepresentation claims." *Iqbal*, 129 S. Ct. at

1949.  The court, therefore, recommends that Plaintiff's "Second Cause of Action" for "Fraud, as against Defendants Colonial and Castle" be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### C.    Claim for Violation of Fair Debt Collection Practices Act

Plaintiff E. Ellen Wessler alleges that Colonial Savings and Castle "violated the FDCPA, 15 U.S.C. § 1692(d), Harassment or Abuse: A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  (Am. Compl. ¶ 217.)  Plaintiff has asserted that Colonial Savings "was not a creditor to which the Wesslers owed any money."  (*Id.* at ¶ 218.)  Further, the Plaintiff alleges that Colonial Savings and Castle "violated the FDCPA, 15 U.S.C. § 1692(e), False or Misleading Representations: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of the section: (2) The false representation of: (A) the character, amount, or legal status of any debt."  (*Id.* at ¶ 224.)  Specifically, Plaintiff claims the January 28, 2011 letter from Colonial Savings, through Castle, which said that Colonial Savings was the current creditor of a debt "allegedly owed by Mrs. Wessler" was false because Colonial Savings and Castle were "collecting the debt of an undisclosed third party." (*Id.* at ¶¶ 224, 227.)  Plaintiff also alleged that Colonial Savings and Castle wrongfully threatened to accelerate the loan and exercise the power of sale when they had no right to do so. (*Id.* ¶¶ 229–237.)

Section 1692e(2)(A) of the FDCPA prohibits the false representation of "the character, amount, or legal status of any debt."  Section 1692e(4) prohibits "[t]he representation or

31

implication that nonpayment of any debt will result in . . . the sale of any property . . . of any person unless such action is lawful and the debt collector or creditor intends to take such action." Section 1692e(5) prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."  Section 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Section 1692f(1) prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  All of the plaintiff's FDCPA claims are expressly premised upon her fraud claim discussed above and the alleged two non-material misrepresentations.

Not all courts have agreed "on whether and when foreclosure activities are covered" by the FDCPA.  *Patrick v. Bank of New York Mellon*, Case No. 11-cv-01304-REB-MJW, 2012 WL 934288, at \*14–16 (D. Colo. March 1, 2012); *Yokomizo v. Deutsche Bank Securities, Inc*., Case No. 11-cv-01630-CMA-KLM, 2011 WL 5024899, at \*4–5  (D. Colo. Oct. 21, 2011), adopted by, 2011 WL 5983575 (D. Colo. Nov.30, 2011); *Rousseau v. Bank of N.Y.*, Case No. 08-cv-00205-PAB-BNB, 2009 WL 3162153, at \*7 (D. Colo. Sept.29, 2009).  "The basic dispute is whether mortgage foreclosures constitute mere enforcement of a security interest by the lender, in which case they would appear to fall outside the scope of the [FDCPA], or whether foreclosures are an attempt to collect the underlying monetary debt, in which case they would fall within the scope of the [FDCPA]."  *Rousseau*, 2009 WL 3162153**,** at \*7.  "The vast majority of courts to address the issue, however, have determined that such actions fall outside the scope of the FDCPA." *Yokomizo*, 2011 WL 5024899, at \*4 (citing *Mayhew v. Cherry Creek Mortg. Co., Inc.,* Case No.

32

09-cv-00219-PAB-CBS, 2010 WL 935674, at *12 (D. Colo. Mar.10, 2010); *Kee v. R–G Crown Bank*, 656 F. Supp.2d 1348, 1354 (D. Utah 2009)).  This is particularly true in this District.  Like the court in *Rousseau*, this court finds no extenuating circumstances to warrant deviation from the majority view on this issue in the absence of Tenth Circuit guidance to the contrary.

Therefore, since the FDCPA does not apply to this mortgage foreclosure and quiet title action, this court recommends that the Plaintiff's claims asserted in the Third Cause of Action for Violations of the Fair Debt Collection Practices Act asserted against Colonial and Castle should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### 3.      *Plaintiffs' Claim for Exemplary Damages*

Obviously, since this court is recommending dismissal of all claims in this action, a claim that exemplary damages be awarded, if the recommendation is accepted, would not survive. However, for the sake of completeness and recognizing that a Magistrate Judge's Recommendation is subject to review and acceptance or rejection, in whole or in part, by the District Court, it is prudent to address this issue herein.

The defendants assert that the punitive damages request in the Amended Complaint must be stricken pursuant to Colo. Rev. Stat. § 13-21-102(1)(a) which provides

> In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

*Id.*  Additionally, the statute provides, "[a] claim for exemplary damages in an action governed

by this section may not be included in any initial claim for relief."  Colo. Rev. Stat. §13-21-102

(1.5(a).  Further,

> A claim for exemplary damages in an action governed by this section may be
> allowed by amendment to the pleadings only after the exchange of initial
> disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the
> plaintiff establishes prima facie proof of a triable issue.

*Id.*

A key question, of course, is whether the Colorado statute applies in federal diversity

cases.  In *Jones v. Krautheim*, 208 F. Supp. 2d 1173, 1175 (D. Colo. 2002), District Judge

Marcia S. Kreiger employed the *Erie* test articulated in *Hanna v. Plumer*, 380 U.S. 460 (1965),

to determine whether Colo. Rev. Stat. § 13-64-302.5(3), governing statements of exemplary

damages against health care providers, applied in diversity cases.  The *Hanna* test requires a

court to first determine whether the state law in question directly conflicts with a federal rule of

civil procedure.  If there is a direct conflict, the federal procedural rule applies and the state

provision does not.  If there is no direct conflict between the state statute and a federal rule, then

a court must consider *Erie*'s [*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)] twin goals of

discouraging forum shopping and avoiding inequitable administration of the law.

Applying that test, Judge Krieger concluded that the provisions of Colo. Rev. Stat. §

13-64-302.5(3) did not directly conflict with any particular Federal Rule of Civil Procedure or

the Federal Rules as a whole, and, moreover, that the twin aims of *Erie* were best satisfied by

applying the Colorado statute.  208 F. Supp. 2d at 1175 (relying on the analysis set forth in

*Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996)); *see also Hartshorn Props.*, *L.L.C. v. BNSF Railway Co.*, Case No. 06-cv-00663-LTB-CBS, 2006 WL 3618292, at *1 (D. Colo. Dec. 7, 2006) (conducting a more thorough *Erie* analysis, and finding no conflict between Colo. Rev. Stat. § 13-21-102(1.5)(a) and federal law).

Also, after conducting a thorough *Erie* analysis, Senior Judge Babcock, reversing himself from a previous holding, concluded that § 13-21-102(1.5)(a) is both procedural and substantive and therefore is applicable in federal diversity cases. *Am. Econ. Ins. Co. v. Schoolcraft*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951 (D. Colo. Jan. 17, 2007).

A plethora of cases apply Colo. Rev. Stat. § 13-21-102(1.5)(a) as a heightened standard of proof. *See Witt v. Condominiums at the Boulders Ass'n*, No. 04-CV-02000-MSK-MEH, 2006 WL 348086, at *10-12 (D. Colo. Feb. 13, 2006) (finding no conflict between Colo. Rev. Stat. § 13-64-302.5 and federal law and finding that the twin aims of *Erie* were best satisfied by applying Colorado law); *Micale ex rel. Charles A. Micale Irrevocable Ins. Trusts v. Bank One N.A.*, 04-cv-00288-EWN-CBS, 2006 WL 1222330, at *5 (D. Colo. May 5, 2006) (applying Colorado law without discussion); *Hartshorn Props., LLC v. BNSF Ry. Co.*, 2006 WL 3618292, at *1-2 (D. Colo. Dec. 7, 2006)

This court concludes that the dual policies of *Erie* command application of the Colorado provision here. Further, the obstacles that Colo. Rev. Stat. § 13-21-102(1.5)(a) places in front of a plaintiff are bound up with Colorado's substantive policy of deterring frivolous assertions of entitlement to exemplary damages. *Trierweiler*, 90 F.3d at 1541. Accordingly, the court finds that Colo. Rev. Stat. § 13-21-102 governs whether Plaintiff should be permitted to assert a claim

for exemplary damages and recommends that if any of the Plaintiffs' claims are allowed to move forward, that the claim in the Amended Complaint for punitive damages be dismissed because it was filed in Plaintiffs' initial pleading in violation of Colo. Rev. Stat. § 13-21-102(1.5)(a).

WHEREFORE, for the foregoing reasons, I respectfully

**RECOMMEND** that

1.      As to Plaintiff Monty Wessler, the "Motion to Dismiss Amended Complaint and Supporting Brief by Defendants Wells Fargo Bank and Mortgage Electronic Registry Systems, Inc." [Doc. No. 38]; "Defendant Colonial National Mortgage ("CNM"), a Division of Colonial Savings, F.A.'s Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" [Doc. No. 60], and; "Defendant Castle Stawiarski, LLC's Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" [Doc. No. 79] be GRANTED and that all claims brought by Monty Wessler be DISMISSED for lack of standing.

2.      As to Plaintiff E. Ellen Wessler, the "Motion to Dismiss Amended Complaint and Supporting Brief by Defendants Wells Fargo Bank and Mortgage Electronic Registry Systems, Inc." [Doc. No. 38] and "Defendant Colonial National Mortgage ("CNM"), a Division of Colonial Savings, F.A.'s Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" [Doc. No. 60] and "Defendant Castle Stawiarski, LLC's Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" [Doc. No. 79] be GRANTED consistent with this Recommendation, and that this case be DISMISSED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 21st day of August, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

38